Kellie Nelson Fetter (Wyo. Bar No. 7-4597)
TAFT STETTINIUS & HOLLISTER LLP
675 Fifteenth Street, Suite 2300
Denver, Colorado 80202

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| **ABC IP, LLC, a Delaware limited liability company,** | ) ) ) | CASE NO. _____ |
| **Plaintiff.** | ) ) | **JURY TRIAL DEMANDED** |
| **-vs-** | ) ) | |
| **FRT TRIGGERS LLC, a Wyoming limited liability company,** | ) ) ) | |
| **Defendant.** | ) ) ) ) | |

## COMPLAINT FOR PATENT INFRINGEMENT AND TRADEMARK INFRINGEMENT

This is an action for patent infringement and trademark infringement in which ABC IP LLC ("ABC" or "Plaintiff") accuses FRT Triggers LLC ("Defendant") of infringing U.S. Patent No. 10,514,223 ("the '223 Patent"), U.S. Patent No. 11,724,003 ("the '003 Patent"), U.S. Patent No. 12,036,336 ("the '336 Patent"), and U.S. Patent No. 12,274,807 ("the '807 Patent), and the FRT-15® trademark as follows:

### PARTIES

1.      ABC is a limited liability company organized under the laws of the State of Delaware with an address at 8 The Green, Suite A, Dover, Delaware 19901.

2.      Upon information and belief, Defendant is a limited liability company existing under the laws of the state of Wyoming and has a principal office at 30 North Gould Street, Suite N, Sheridan, Wyoming 82801.

## JURISDICTION AND VENUE

3.      This is an action for patent infringement arising under 35 U.S.C. §§ 271, 281, and 284-85 and for trademark infringement under 15 U.S.C. § 1051 *et seq*.

4.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1338, which directs that United States District Courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents and pursuant to 28 U.S.C. § 1331, which pertains to civil actions arising under the laws of the United States.

5.      This Court has subject matter jurisdiction under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a) with respect to the claims arising out of the alleged violations of The Lanham Act, 15 U.S.C. § 1051 et seq., and under 28 U.S.C. § 1338(b) and/or § 1367(a) with respect to the claims under the state statutory and common law. Federal question jurisdiction is conferred pursuant to 28 U.S.C. §§ 1331 and 1338(a), and 15 U.S.C. § 1121(a).

6.      Personal jurisdiction and venue over Defendant is proper in this District because Defendant resides in and/or has a place of business this district.

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1400(b). Defendant resides in this district and/or has a regular and established place of business in this District.

## BACKGROUND

8.       This lawsuit asserts infringement of the '223 Patent, the '003 Patent, the '336 Patent, and the '807 Patent (collectively, "the Patents In Suit"). True and correct copies of the Patents In Suit are attached hereto as Exhibits A-D, respectively.

9.     The '223 Patent was lawfully and properly issued by the United States Patent and Trademark Office on December 24, 2019.

10.     The '003 Patent was lawfully and properly issued by the United States Patent and Trademark Office on August 15, 2023.

11.     The '336 Patent was lawfully and properly issued by the United States Patent and Trademark Office on July 16, 2024.

12.     The '807 Patent was lawfully and properly issued by the United States Patent and Trademark Office on April 15, 2025.

13.     ABC is the current assignee and owner of all right, title and interest in and to the Patents In Suit. These assignments haves been recorded at the United States Patent and Trademark Office ("USPTO").

14.     Upon information and belief, Defendant has committed acts of patent infringement, which will be described in more detail below. These acts are in violation of 35 U.S.C. § 271 and should be considered willful.

15.     Upon information and belief, Defendant has committed acts of trademark infringement, which will be described in more detail later. These acts are in violation of 15 U.S.C. § 1125(a) and should be considered willful.

16.     Plaintiff and its exclusive licensee, Rare Breed Triggers, LLC ("Rare Breed"), are responsible for developing the forced reset trigger ("FRT"), including the Rare Breed FRT-15®, Rare Breed FRT-15E3™, and Rare Breed FRT-15L3™ for use in the AR-15 weapons platform. The FRT-15® trigger embodies aspects of the invention claimed in the '223 Patent. The FRT-15E3™ and FRT-15L3™ triggers embody aspects of the invention claimed in the '223, '003, '336, and '807 Patents.

17.    The Rare Breed FRT-15® trigger was first introduced to the market in December 2020. It was unique, being the only hammer-forced-reset trigger on the market and exclusively protected by the '223 Patent. Its release created an entirely new market segment that did not previously exist and effectively replaced any market for bump stocks or "binary" triggers. The FRT-15® quickly became the subject of widespread publicity, strong consumer interest, and substantial sales.

18.    As the first Forced Reset Trigger ("FRT") ever offered in the United States, the FRT-15™ launched in a single configuration with a two-position selector: "Safe" and "Forced Reset Semi-Automatic with locking member." No other trigger of its kind had been commercially produced at the time.

19.    For the entire time the FRT-15® has been marketed and sold by Rare Breed, it has been marked with a patent notice complying with 35 U.S.C. § 287. The patent number is engraved on the product and displayed on packaging as shown below:



20.     Building on the groundbreaking success of the original FRT-15®, ABC and its licensee Rare Breed developed and publicly demonstrated on January 15, 2022, the FRT-15E3™, a next-generation trigger system covered by the Patents In Suit. The "E" in FRT15-E3 stood for "Enhanced" and the "3" indicated "3-Position". The FRT-15E3™ is a "three-position" type forced reset trigger in which a safety selector can change the mode of operation between "Safe," "Standard Semi-Automatic with disconnector," and "Forced Reset Semi-Automatic with locking member" modes. This advancement allowed users to switch between conventional semi-automatic fire and forced-reset operation. Although the FRT-15® gave rise to an entirely new market segment for forced reset triggers, the FRT-15E3™, featuring a three-position selector, further advanced and expanded that segment through enhanced functionality.

21.     Before bringing the FRT-15E3 to market, Plaintiffs developed and patented another method to achieve a "three-position" type forced reset trigger that utilizes a cam to reset the trigger in forced rest mode. Now, with two patented options to produce a 3-position trigger, Plaintiffs decided to move away from the name FRT-15E3 and create two new variations of the name, with one name representing each of the two patented technologies. One of those names was the FRT-15L3, with the "L" indicating that it uses a "Locking Member."

22.     On August 24, 2024, ABC filed intent-to-use trademark applications to register the marks FRT-15L3 and FRT-15C3 for "triggers for firearms."

23.     Defendant is responsible for misappropriating Plaintiff's proprietary technology and selling it as their own.

24.     On July 3, 2024, counsel for Plaintiff sent a cease and desist demand letter informing a principal of Defendant of the '223 Patent, the '003 Patent and expressly accusing it of patent infringement.

**The Inventions**

25.    The '223 Patent provides a novel device for accelerating the firing sequence of any semiautomatic firearm, in contrast to a standard semiautomatic trigger or other prior art devices that allow accelerated rate of semiautomatic firing. While the '223 Patent may be adapted to many types of firearms, the Plaintiff's FRT-15® trigger was designed as a drop-in replacement particularly to fit AR-15 pattern firearms.

26.    An AR-15 pattern firearm, for example, is considered a semiautomatic firearm. In standard semiautomatic firearms, the trigger releases a sear which allows a hammer to contact a firing pin and fire a chambered ammunition cartridge, i.e., a "round." Part of the force that propels the round is used to cycle the rifle's bolt/bolt carrier or "action" in a rearward direction which extracts and ejects the spent cartridge. Springs at the rear of the bolt carrier act to return the bolt to its original firing position (i.e., into battery), and while so returning, a new cartridge (i.e., "round") is placed in the firing chamber. The longitudinal reciprocation of the bolt also resets the hammer and enables the weapon to be fired again. This process can be seen in the sequence of illustrations below.

27.    For background context, the following is a depiction and description of the operation of a *standard* **AR-pattern trigger mechanism**:



28.    The trigger is shown in purple. The hammer is shown in brown. The disconnector is shown in green. The bolt carrier is shown in blue.

29.    The process is commenced by the trigger being pulled by the user. The trigger releases the hammer from the trigger sear and allows the hammer to strike the firing pin.



30.     A portion of the propellant gas is used to begin the process of sending the bolt carrier to the rear of the firearm.



31.     The rear-ward movement of bolt carrier cocks the hammer on the disconnector and allows the bolt to return into battery with a new round inserted into the chamber. While this is happening, in the standard AR-pattern semiautomatic trigger, the user can either continue to hold the trigger in a pulled (i.e., fired) state or allow the trigger to return to its reset state, in which the sear, rather than the disconnector, engages and holds the hammer in a cocked position.

32.     The '223 Patent is a semiautomatic trigger that represents improvement on the above-described technology because it makes the disconnector unnecessary by forcibly returning the trigger to the reset state.

33.     In the standard AR-pattern trigger assembly, the purpose of the disconnector is to hold the hammer in a cocked position until the trigger member is reset by a trigger spring when the user lets the trigger reset. The disconnector allows the firearm to be fired only a single time when the trigger is pulled and held, because the user is not typically able to manually reset the trigger rapidly enough so that the sear engages before the bolt carrier or bolt returns to its in-battery

position. The disconnector prevents the firearm from either firing multiple rounds on a single pull of the trigger, or from allowing the hammer to simply "follow" the bolt carrier as it returns to battery without firing a second round, leaving the hammer uncocked.

34.    The '223 Patent invention does not require a disconnector in the trigger mechanism. The '223 Patent teaches a forcible reset of the trigger by the hammer while the bolt returns to the in-battery position. The '223 Patent also teaches a "locking bar" which limits movement of the trigger. The locking bar acts to prevent the trigger from being pulled a second (or subsequent) time until the bolt carrier has returned to the in-battery position. This is depicted in the illustrations below.

35.    The following is a reproduction of a representative trigger assembly according to an embodiment of the '223 Patent:



36.    The trigger is shown in red. The hammer is shown in brown. The locking bar is shown in green. The bolt carrier is shown in blue.



37.     When the trigger is pulled, the hammer is released, which strikes the firing pin carried in the bolt carrier.

38.     As the round fires, propellant gas pressure causes the action to cycle. This begins the process of sending the bolt carrier toward the rear of the firearm.



39.     As the bolt carrier moves toward the rear of the firearm, the bolt carrier engages with and cocks the hammer. The invention of the '223 Patent provides that the hammer forcibly resets the trigger. Simultaneously, the locking bar engages with the trigger and mechanically

prevents the shooter from pulling the trigger until the locking bar is reset. The locking bar cannot be reset until the bolt carrier returns to its in-battery position.

40.    As the bolt carrier returns forward to its in-battery position, a new round is inserted into the chamber and the bolt closes. As the bolt closes, the bolt carrier contacts and pivots the locking bar, freeing the trigger to be pulled again by the user and the firing process repeated.

### The Three-Position Forced Reset Trigger

41.    The so-called "three-position" forced reset trigger described and claimed in the '003, '336, and '807 Patents allows the user to select between modes of operation. That is, using the safety selection, the trigger mechanism can be set to operate like the standard disconnector semiautomatic trigger described in paragraphs 27-31, above, in one mode and to operate like the forced reset trigger described in paragraphs 32-40, above, in another mode.

42.    In the forced reset mode, the safety selector disables the disconnector and allows the trigger to be fully forcibly reset:



## The FRT-15™ Trademark

43.    The triggers sold by ABC's licensee, Rare Breed, have been consistently sold under the trademark FRT-15®, and its packaging and promotions are so marked with the FRT-15® trademark.

44.    ABC is the owner of the FRT-15® trademark and has exclusively licensed Rare Breed to use this mark.

45.    The FRT-15® trademark is recognized by consumers as distinctive of goods originating from Rare Breed.

46.    Rare Breed's exclusive use of the FRT-15® trademark and goodwill inures to the benefit of the licensor, ABC.

47.    ABC is the owner of U.S. Trademark Registration No. 7,004,418, issued March 21, 2023, for the mark FRT-15 for "triggers for firearms." A copy of this registration certificate is attached as Exhibit E.

## The Infringing Devices

48.    Defendant is currently making, using, selling, and/or offering for sale a "three-position" version of Plaintiffs' FRT-15™ trigger assembly, which embodies the technology claimed in the Patents In Suit.

49.    Upon information and belief, Humboldt Intermountain Machine, a Utah corporation, manufactured the Infringing Device for Defendant.

50.    Upon information and belief, Defendant used Davidson Defense, a Utah corporation, MMC Armory, a Utah limited liability company, and DeltaTeamTactical.com d/b/a Delta Team Tactical, a Utah limited liability company, to distribute the infringing devices.

51.     Defendant's infringing trigger assembly is called the "FRT-15-L3." Defendant sells or offers for sale forced reset triggers ("the Infringing Device").  An exemplary photograph of the Infringing Device is shown below:



52.     Defendant's Infringing Device employs and embodies the technology claimed by the '223 Patent by using the hammer to forcibly reset the trigger and to prevent the trigger from being pulled again by virtue of the locking bar engaging the trigger until the forward action of the bolt carrier disengages the locking bar from the trigger as specified in at least Claim 1 of the '223 Patent. Furthermore, the Infringing Devices are assembled in a housing which includes transversely aligned pairs of openings for receiving hammer and trigger assembly pins, as specified in Claim 4 of the '223 Patent.

53.     Defendant's Infringing Device employs and embodies the technology claimed by the, '003, '336, and '807 Patents by also comprising in intermediate standard disconnector mode.

54.    The user can rotate a safety selector between safe, standard disconnector semiautomatic, and forced reset semiautomatic modes.

55.    For the reasons discussed in more specificity below, Defendant's Infringing Device infringes at least one claim of each of the '223, '003, '336, and '807 Patents and thus, Defendant is liable for patent infringement pursuant to 35 U.S.C. § 271.

56.    In view of the Defendant's prior demand letter in advance of commercial sale of the Infringing Device, and Defendant's failure to acknowledge its receipt, its failure to act thereupon, and its continued acts of making, using, selling, and/or offering for sale the Infringing Device, the infringement is willful.

## COUNT I – INFRINGEMENT OF THE '223 PATENT – 35 U.S.C. § 271(a)

57.    The allegations set forth in paragraphs 1-56 are fully incorporated into this First Count for Relief.

58.    Upon information and belief, Defendant has and continues to directly and willfully infringe, including through the doctrine of equivalents, at least Claim 4 of the '223 Patent by making, using, selling, offering for sale, importing and/or providing and causing the Infringing Device to be used without authority within the United States.

59.    Because the claims of the '223 Patent describe the invention as "comprising" the enumerated elements, the scope of the claims are not limited to those elements and the inclusion of additional structures or features not specified in a claim does not avoid infringement.

60.    The Infringing Device infringes, for example, claim 4 of the '223 Patent. The FRT-153L is for an AR-pattern firearm, which has a lower receiver with a fire control pocket and assembly pin openings in side walls of the pocket. An AR-pattern firearm has a bolt carrier that reciprocates and pivotally displaces a hammer when cycled. The FRT-15L3 includes a housing

with transversely aligned pairs of openings for receiving hammer and trigger assembly pins. The FRT-15L3 includes a hammer with a sear notch and is mounted in the housing to pivot on a transverse axis between set and released positions. The FRT-15L3 includes a trigger member with a sear and that is mounted in the housing to pivot on a transverse axis between set and released positions. The trigger member has a surface (shown above) positioned to be contacted by the hammer when the hammer is displaced by the bolt carrier when cycled. The contact causes the trigger member to be forced to the set position. The FRT-15L3 includes a locking bar that is pivotally mounted in the housing. The locking bar is spring biased toward a first position in which the locking bar mechanically blocks the trigger member from moving to the released position. The locking bar is movable against the spring bias to a second position when contacted by the bolt carrier reaches a substantially in-battery position. In this position, the trigger member can be moved by an external force (pull by the trigger finger) to the released position.

61.     Accordingly, the Defendants' making, using, selling, offering for sale, and/or importing of the Infringing Device is a direct infringement of the '223 Patent pursuant to 35 U.S.C. § 271(a).

62.     Defendant's acts of infringement are willful and deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

63.     Plaintiff has been substantially harmed by Defendant's infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being no less than a reasonable royalty, treble damages, and attorneys' fees.

**COUNT II – INFRINGEMENT OF THE '003 PATENT – 35 U.S.C. § 271(a)**

64.     The allegations of paragraphs 1-63 are incorporated by reference as if fully set out herein.

65.     Upon information and belief, Defendant has and continues to directly and willfully infringe, including through the doctrine of equivalents, at least Claim 4 of the '003 Patent by making, using, selling, offering for sale, importing and/or providing and causing to be used without authority within the United States, the Infringing Device.

66.     The Infringing Device infringes, for example, claim 4 of the '003 Patent. The Infringing Device is a firearm trigger mechanism that includes a housing that has a first pair of transversely aligned openings for receiving a hammer pin and a second pair of transversely aligned openings for receiving a trigger member pin. The Infringing Device includes a hammer having a sear catch and a hook for engaging a disconnector. The hammer is mounted in the housing to pivot on the hammer pin between set and released positions. The hammer is adapted to be pivoted rearward by rearward movement of a bolt carrier. The Infringing Device includes a trigger member that has a sear and is mounted in the housing to pivot on the trigger member pin between set and released positions. The trigger member has a surface positioned to be contacted by a surface of the hammer during rearward pivoting of said hammer to cause the trigger member to be forced to the set position. When the sear and sear catch are in engagement in the set positions of the hammer and trigger member and are out of engagement in the released positions of the hammer and trigger member. The Infringing Device includes a disconnector that has a hook for engaging the hammer and is mounted in the housing to pivot on the trigger member pin. A locking member is mounted in the housing to pivot on a transverse locking member pin and is pivotable between a first position at which the locking member mechanically blocks the trigger member from moving to the released

position and a second position at which the locking member does not mechanically block the trigger member, allowing the trigger member to be moved to the released position. The locking member is spring biased toward the first position and adapted to be moved against the spring bias to the second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position. A safety selector is mounted in a fire control mechanism pocket of a receiver to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions. When in the standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, at which time a user must manually release the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull said trigger member to fire the firearm. When in the forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer, causing the trigger member to be forced to the set position and the safety selector prevents the disconnector hook from catching said hammer hook. Thereafter, when the bolt carrier reaches the substantially in-battery position the user can pull the trigger member to fire the firearm without manually releasing the trigger member.

67. Accordingly, the Defendants' making, using, selling, offering for sale, and/or importing of the Infringing Device is a direct infringement of the '003 Patent pursuant to 35 U.S.C. § 271(a).

68. Defendant's acts of infringement are willful and deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

69. Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction,

damages adequate to compensate for the infringement, being no less than a reasonable royalty, treble damages, and attorneys' fees.

**COUNT III – INFRINGEMENT OF THE '336 PATENT – 35 U.S.C. § 271(a)**

70.     The allegations of paragraphs 1-69 are incorporated by reference as if fully set out herein.

71.     Upon information and belief, Defendant has and continues to directly and willfully infringe, including through the doctrine of equivalents, at least Claim 3 of the '336 Patent by making, using, selling, offering for sale, importing and/or providing and causing to be used without authority within the United States, the Infringing Device.

72.     The Infringing Device infringes, for example, claim 3 of the '336 Patent. The Infringing Device is a firearm trigger mechanism that includes a housing having a first pair of transversely aligned openings for receiving a hammer pin and a second pair of transversely aligned openings for receiving a trigger member pin. It includes a hammer having a sear catch and a hook for engaging a disconnector and mounted in the housing to pivot on said hammer pin between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier. It includes a trigger member having a sear and mounted in the housing to pivot on the trigger member pin between set and released positions. The trigger member has a surface positioned to be contacted by a surface of the hammer during rearward pivoting of the hammer to cause the trigger member to be forced to the set position The sear and sear catch are in engagement in the set positions of the hammer and trigger member and are out of engagement in the released positions of said hammer and trigger member. A disconnector has a hook for engaging the hammer and is mounted in the housing to pivot on the trigger member pin. A locking member is mounted in the housing to pivot on a transverse locking member pin, the locking member being pivotable

between a first position at which the locking member mechanically blocks the trigger member from moving to the released position and a second position at which the locking member does not mechanically block the trigger member, allowing the trigger member to be moved to its released position. The locking member is spring biased toward the first position and is adapted to be moved against the spring bias to the second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position. A safety selector is adapted to be mounted in a fire control mechanism pocket of a receiver to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions. The safety selector is configured such that, when the safety selector is in the forced reset semi-automatic position, the safety selector causes the disconnector to be repositioned and, in doing so, prevents the disconnector hook from catching the hammer hook. When in the standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, at which time a user must manually release the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to their set positions so that the user can pull the trigger member to fire the firearm. When in the forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer causing the trigger member to be forced to the set position, the safety selector preventing the disconnector hook from catching the hammer hook. Thereafter, when the bolt carrier reaches the substantially in-battery position, the user can pull the trigger member to fire the firearm without manually releasing the trigger member.

73. Accordingly, the Defendants' making, using, selling, offering for sale, and/or importing of the Infringing Device is a direct infringement of the '336 Patent pursuant to 35 U.S.C. § 271(a).

74.    Defendant's acts of infringement are willful and deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

75.    Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being no less than a reasonable royalty, treble damages, and attorneys' fees.

### COUNT IV – INFRINGEMENT OF THE '807 PATENT – 35 U.S.C. § 271(a)

76.    The allegations of paragraphs 1-75 are incorporated by reference as if fully set out herein.

77.    Upon information and belief, Defendants have and continues to directly and willfully infringe, including through the doctrine of equivalents, at least Claim 1 of the '807 Patent by making, using, selling, offering for sale, importing and/or providing and causing to be used without authority within the United States, the Infringing Device.

78.    The Infringing Device infringes, for example, claim 1 of the '807 Patent as it is a firearm trigger mechanism comprising a hammer having a sear catch and a hook. The hammer is adapted to be mounted in a fire control mechanism pocket of a receiver to pivot on a transverse hammer pivot axis between set and released positions. The hammer is adapted to be pivoted rearward by rearward movement of a bolt carrier. It includes a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions, said trigger member having a surface positioned to be contacted by a surface of said hammer during rearward pivoting of said hammer to cause said trigger member to be forced to said set position. When the sear and sear catch are in engagement in the set positions of the hammer and trigger member and are out of engagement in

the released positions of the hammer and trigger member. It includes a disconnector that has a hook for engaging the hammer hook and that is adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis. The Infringing Device includes a locking member that is adapted to be movably mounted in the fire control mechanism pocket. The locking member is movable between a first position at which the locking member mechanically blocks the trigger member from moving to the released position and a second position at which the locking member does not mechanically block the trigger member, allowing the trigger member to be moved to the released position. The locking member is spring biased toward its first position and is adapted to be moved against the spring bias to its second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position. The Infringing Device includes a safety selector adapted to be movably mounted in the fire control mechanism pocket to move between safe, standard semi-automatic, and forced reset semi-automatic positions. When in the standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that the disconnector hook catches the hammer hook, at which time a user must manually release said trigger member to free said hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull said trigger member to fire the firearm. When in the forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer, causing the trigger member to be forced to the set position. The said safety selector prevents the disconnector hook from catching the hammer hook and then when the bolt carrier reaches the substantially in-battery position the user can pull said trigger member to fire the firearm without manually releasing said trigger member.

79.    Accordingly, the Defendants' making, using, selling, offering for sale, and/or importing of the Infringing Device is a direct infringement of the '807 Patent pursuant to 35 U.S.C. § 271(a).

80.    Defendant's acts of infringement are willful and deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

81.    Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being no less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT V – TRADEMARK INFRINGEMENT UNDER 35 U.S.C. §§ 1125(a) and 1114(1)(a)

82.    The allegations of paragraphs 1-81 are incorporated by reference as if fully set out herein.

83.    This claim arises under the Trademark Act of 1946 ("Lanham Act"), 15 U.S.C. § 1051 *et seq.*, particularly 15 U.S.C. §§ 1125(a) and 1114(1)(a), and alleges use of false designations of origin, and false descriptions and misrepresentations.

84.    ABC is the owner of U.S. Trademark Registration No. 7,004,418 for FRT-15 for "triggers for firearms."

85.    ABC filed U.S. Trademark Application No. 98/715,335 for the mark FRT-15L3 for "triggers for firearms" on August 24, 2024, before the Defendants began marketing, offering, or selling the Infringing Device under the mark FRT-15L3.

86.    All goodwill and rights derived from use by the exclusive licensee, Rare Breed, have inured to the benefit of ABC.

87.    The mark FRT-15L3 is confusingly similar to the mark FRT-15 when use on substantially identical goods marked to the same group of consumers.

88.    As a result of Rare Breed's extensive and widespread advertising and sale of triggers using the FRT-15® trademark, and the distribution and sale of thousands of such triggers in the United States and use of the FRT-15L3 trademark, ABC, through its exclusive licensee Rare Breed, has established valuable goodwill, public recognition, and secondary meaning in the trademarks in the United States.

89.    Defendant has used the trademark FRT-15L3 (the "Infringing Mark") on a forced reset trigger sold in direct competition with the Rare Breed FRT-15™ trigger.

90.    Defendant's use of the Infringing Mark (a) constitutes the use of false designations of origin and tends falsely to represent or designate the source of Defendant's products as being affiliated with, connected with, or associated with ABC's licensee Rare Breed and tends falsely to represent or designate that Defendant's products originate with, are sponsored or approved by, or are otherwise connected with Rare Breed when in fact Defendant is neither connected with nor authorized by Rare Breed, and (b) are likely to cause and has caused confusion or mistake or deceived the trade and users as to the origin, sponsorship, association, or approval of Defendant's forced reset trigger products.

91.    The acts of Defendant complained of herein have been without the authorization or consent of Rare Breed or ABC and have damaged, are damaging, and are likely to continue to damage Rare Breed and ABC.

92.    The acts of Defendant complained of herein constitute a violation of § 43(a) of the Trademark Act of 1946, 15 U.S.C. § 1125(a), have caused irreparable harm and damage to Rare

Breed and ABC for which there is no adequate remedy at law, and have caused Rare Breed and ABC to suffer monetary damages in an amount thus far not determined.

93.    By reason of the acts of Defendant alleged herein, ABC has suffered, is suffering, and will continue to suffer irreparable damage, which damage will continue unless and until enjoined by order of this Court.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiffs respectfully request that this Court enter:

a.  A judgment in favor of Plaintiff that Defendant has infringed the '223 Patent;

b.  A judgment in favor of Plaintiff that Defendant has infringed the '003 Patent;

c.  A judgment in favor of Plaintiff that Defendant has infringed the '336 Patent;

d.  A judgment in favor of Plaintiff that Defendant has infringed the '807 Patent;

e.  A judgment in favor of Plaintiff that Defendant has infringed the FRT-15® Trademark;

f.  A preliminary injunction enjoining Defendant and its principals, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of the '223, '003, '336, and '807 Patents during the pendency of this case, or other such equitable relief as the Court determines is warranted;

g.  A preliminary injunction enjoining Defendant and its principals, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement the FRT-15™ Trademark during the pendency of this case, or other such equitable relief as the Court determines is warranted;

h.  A permanent injunction enjoining Defendant and its principals, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active

concert therewith from infringement or contributing to the infringement of the '223, '003, '336, and '807 Patents, or other such equitable relief as the Court determines is warranted;

i.  A permanent injunction enjoining Defendant and its principals, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement of the FRT-15L3™ Trademark, or other such equitable relief as the Court determines is warranted;

j.  A judgment and order requiring Defendants to pay to Plaintiffs their damages, costs, expenses, and prejudgment and post-judgment interest for Defendants' infringement of the '223, '003, '336, and '807 Patents as provided under 35 U.S.C. § 284, and an accounting of ongoing post-judgment infringement;

k.  A judgment and order requiring Defendants to pay to Plaintiffs their damages, costs, expenses, and prejudgment and post-judgment interest for Defendants' infringement of the FRT-15L3™ Trademark as provided under 15 U.S.C. § 1117, and an accounting of ongoing post-judgment infringement; and

l.  Any and all other relief, at law or equity, to which Plaintiffs may show themselves to be entitled.

## **DEMAND FOR JURY TRIAL**

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

DATED: May 16, 2025                    Respectfully submitted,

                                       /s/*Kellie Nelson Fetter*
                                       Kellie Nelson Fetter (WSB 7-4597)
                                       TAFT STETTINIUS & HOLLISTER LLP
                                       675 Fifteenth Street, Suite 2300
                                       Denver, Colorado 80202
                                       303-299-8448
                                       kfetter@taftlaw.com

                                       *Attorney for Plaintiff*